**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

ANGELO A. C.,[1]

        Plaintiff,

    v.                                        **DECISION AND ORDER**
                                                        20-CV-1579-A

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    Plaintiff Angelo A. C. ("Plaintiff"), brings this action seeking review of the Commissioner of Social Security's final decision that denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), and Supplemental Security Income ("SSI") under Title XVI of the SSA.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 11, 12), and Plaintiff filed a reply (Dkt. No. 14).

    The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary to explain its decision.  *See Schaal v. Apfel*, 134 F.3d 496, 500-501 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

evaluation process that Administrative Law Judges [ALJs] are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).  For the reasons that follow, the Court finds that substantial evidence supports the final decision of the Commissioner denying Plaintiff's applications for DIB and SSI under the SSA.  That decision is hereby AFFIRMED.

## PROCEDURAL HISTORY

On February 28, 2014, Plaintiff was in a motor vehicle accident and sustained injury to his neck and low back.  T. 319, 388, 488-490.[2]  On November 28, 2014, he underwent fusion surgery on his lumbar spine at L4-L5 and L5-S1 to address that injury, with "bilateral posterior screws and spanning rods."  T. 387, 417.  In June 2017, x-ray imaging revealed fracture of the bilateral posterior screws at S1; the remainder of the hardware from Plaintiff's surgery remained intact.  T. 356, 387.

Plaintiff applied for DIB and SSI on July 19, 2017 and August 1, 2017, respectively, at the age of 32, alleging disability beginning on February 15, 2017, due to the double fusion surgery on L4-S1, herniated discs in his back and neck, depression, and anxiety.  T. 224-231, 246-250.[3]  His applications were initially denied in October 2017.  T. 102-103, 106-117.  After filing a request for a hearing, T. 118-119, Plaintiff appeared with his attorney and testified at a hearing on September 27, 2019, along with a Vocational Expert ("VE") who also testified, *see* T. 30-70.  Following the hearing, the ALJ issued an unfavorable decision on November 27,

---

[2] "T. __" refers to pages of the administrative transcript at Dkt. No. 10.

[3] With respect to Plaintiff's DIB application, Plaintiff's date last insured was December 31, 2021.  T. 15, 17, 246.

2019, finding Plaintiff not disabled within the meaning of the SSA.  T. 12-29.  Plaintiff thereafter requested review by the Appeals Council, but his request was denied in September 2020.  T. 1-6.  This action seeks review of the Commissioner's final decision.  Dkt. No. 1.

## DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g).  "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### **Physical RFC finding**

Plaintiff takes issue solely with the ALJ's physical Residual Functional Capacity (RFC) finding.  First, he argues that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ improperly rejected the opinion of consultative internal medicine examiner Hongbiao Liu, M.D. ("Dr. Liu").  Second, he argues that the ALJ improperly focused on Plaintiff's activities of daily living and conservative treatment to "minimize his physical limitations."

After finding that Plaintiff has severe impairments of degenerative disc disease of the cervical and lumbar spines, status post fusion, along with non-severe

impairments of opioid dependence, adjustment disorder, bipolar disorder, and anxiety disorder, the ALJ determined that Plaintiff has the RFC to perform light work, with the following limitations:  can frequently reach overhead and in all directions bilaterally; can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and can occasionally work in vibration.  T. 19.

The regulations define "light work" to include "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and to require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b); 416.967.  "The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam); *see* Social Security Ruling ("SSR") 83-10, 1983 WL 31251 at * 5, 1983 SSR LEXIS 30.

**Consultative Examiner's Opinion**

Plaintiff first argues that the ALJ improperly rejected Dr. Liu's opinion as "vague," and the error is not harmless because the RFC of light work runs contrary to Dr. Liu's opinion.

As noted by the ALJ, Dr. Liu examined Plaintiff on October 2, 2017.  *See* T. 21, 454-457.  Plaintiff reported to Dr. Liu a history of constant neck and low back pain, and the need to change positions every five minutes when sitting or standing.

In Dr. Liu's physical examination of Plaintiff, he observed that Plaintiff was walking slowly and could not perform "heel and toe" walking or a squat due to low back pain.  In performing a musculoskeletal examination of Plaintiff, Dr. Liu indicated that Plaintiff had a reduced range of motion in his cervical and lumbar spine, shoulders, and left knee; had positive straight leg raise testing;[4] and had decreased left leg sensation compared to his right side.

There were also some normal findings, however, as noted by the ALJ.  Plaintiff's stance was normal; he used no assistive device during the examination; he did not need assistance changing for the examination or getting on and off the examination table; he was able to rise from his chair without any difficulty; he had a full range of motion in his elbows, forearms, wrists, hips, and ankles bilaterally; his joints were stable and nontender; he had 5/5 strength in his upper and lower extremities; his hand and finger dexterity were intact; and his grip strength was 5/5 bilaterally.

Dr. Liu diagnosed Plaintiff with chronic neck and low back pain and indicated his prognosis was stable.  As the ALJ noted, based on his examination findings, Dr. Liu opined that Plaintiff had a "moderate limitation for prolonged walking, bending, kneeling, and overhead reaching."  T. 21, 456.

The ALJ found Dr. Liu's opinion "[s]omewhat persuasive," concluding that while the opinion was "supported by personal examination of the claimant" and

---

[4] The straight leg raise test or "Lasègue's sign" is performed "when a subject is supine with hip flexed and knee extended, [and] dorsiflexion of the ankle causing pain or muscle spasm in the posterior thigh indicates lumbar root or sciatic nerve irritation."  Stedman's Medical Dictionary 1770 (28th ed. 2006).

5

showed "multiple deficits," the opinion was "vague" and "many of the deficits observed during th[e] exam [were] inconsistent with the claimant's longitudinal treatment history."  T. 22.[5]  The ALJ noted, by way of example, Plaintiff's treatment notes that failed to document continued deficits in musculoskeletal range of motion or sensation or gait.  T. 22.  He concluded that the "overall record" supported "a finding that the moderate limits noted by Dr. Liu do not suggest the need for greater limitation than [those] indicated" in the RFC.  T. 22.

Plaintiff argues that if the ALJ believed that Dr. Liu's opinion was vague, he should have contacted Dr. Liu to clarify what he meant by the term "moderate" before relying on that opinion.  In any event, Plaintiff argues, the opinion was *not* vague, and the error is harmful because a moderate limitation for prolonged walking "could be" inconsistent with the ALJ's finding of a light RFC, "depending on what Dr. Liu meant by it."

Terminology such as "mild," "moderate," and "marked" in a consultative examiner's report to describe a plaintiff's restrictions "is not necessarily without utility."  *Caci v. Comm'r of Soc. Sec.*, 6:18-cv-06533-MAT, 2020 WL 43512, 2020 U.S. Dist. LEXIS 367, *9-10 (W.D.N.Y. Jan. 2, 2020) (internal quotation marks and citations omitted).  "The Second Circuit has stated that a consultative examiner's

---

[5] Plaintiff's claims in this case were filed after March 27, 2017, which means the new regulations apply to his claims.  "For claims filed on or after March 27, 2017, ALJs do not defer to, or give specific evidentiary weight to, any medical opinions. 20 C.F.R. § 416.920c(a).  Instead, ALJs must evaluate medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors.  *Id.* § 416.920c(c)(1)-(5).  *Supportability and consistency are the most important factors.  Id.* § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is supported by objective medical evidence and the medical source's supporting explanations, and consistency is the extent to which an opinion is consistent with other medical or non-medical sources.  *Id.* § 416.920c(c)(1)-(2)."  *Tammy T. v. Kijakazi*, Case No. 5:21-cv-1, 2022 WL 71995, 2022 U.S. Dist. LEXIS 3751, *35 (D. Vt. Jan. 7, 2022) (emphasis added).

report which concludes that a claimant's condition is 'mild' or 'moderate' *without additional information* does not permit an ALJ to infer that a claimant is capable of performing the exertional requirements of work, where such opinion was *the only evidence* supporting the ALJ's conclusion." *Michael V. v. Comm'r of Soc. Sec.*, 20-CV-678-HKS, 2021 WL 4348741, 2021 U.S. Dist. LEXIS 183491, *9 (W.D.N.Y. Sept. 24, 2021) (emphases added), citing *Curry v. Apfel*, 209 F.3d 117, 123-124 (2d Cir. 2000), *superseded by statute on other grounds as recognized in Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order).

In other words, "Courts routinely find it is appropriate for an ALJ to rely on medical source opinions finding that a plaintiff has mild or moderate limitations to support an RFC determination that a plaintiff can perform light work when there is other evidence of record also supporting that conclusion." *Ray v. Comm'r of Soc. Sec.*, 1:19-CV-00345 EAW, 2020 WL 2315581, 2020 U.S. Dist. LEXIS 82710, *12 (W.D.N.Y. May 11, 2020). This comports with the observation that "[a]lthough some caselaw suggests that moderate or severe limitations in prolonged walking are inconsistent with [the] full range [of] light or medium work . . . other courts do not consider an opinion assessing moderate limitations for sitting, standing and walking inconsistent with a determination that the claimant can perform the requirements of light or medium work." *Harrington v. Colvin*, 14-CV-6044P, 2015 WL 790756, 2015 U.S. Dist. LEXIS 22357, *36-39 (W.D.N.Y. Feb. 25, 2015) (collecting cases).

Plaintiff essentially argues that the "moderate" limitations opined to by Dr. Liu were not "vague" in the context of the other evidence in the record, and thus, the ALJ should have wholesale adopted that opinion instead of finding it only

7

"[s]omewhat persuasive." In a related fashion, Plaintiff asserts that the ALJ neglected his duty to explain how Plaintiff could perform light work even though Dr. Liu found Plaintiff had these moderate limitations, and improperly elevated his "lay opinion" over that of Dr. Liu's professional medical opinion. Upon its review of the ALJ's decision and the entire record, however, the Court disagrees.

"The ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone." *Sonja H. v. Comm'r of Soc. Sec.*, Case # 1:19-CV-1086-DB, 2021 WL 75657, 2021 U.S. Dist. LEXIS 4039, *15 (W.D.N.Y. Jan. 7, 2021). "It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis." *Williams v. Comm'r of Soc. Sec.*, 18-CV-1027, 2020 WL 4904947, 2020 U.S. Dist. LEXIS 151236, *7 (W.D.N.Y. Aug. 20, 2020), citing 20 C.F.R. §§ 404.1545(a)-(e) and *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).

Here, it is apparent from both the ALJ's decision and the record how the ALJ found Plaintiff could perform a limited range of light work. In addition to Dr. Liu's opinion, which the ALJ found "[s]omewhat persuasive," the ALJ also found that an October 11, 2017 opinion by J. Poss, M.D. ("Dr. Poss"), a State agency physician who reviewed the record evidence, was "persuasive" in that Dr. Poss opined Plaintiff was "capable of performing light work with similar limitations" to those in the RFC. T. 22; *see* T. 85-87. The ALJ reasoned that Dr. Poss's opinion was supported with explanations and citations to evidence, and unlike Dr. Liu's opinion it was consistent

8

with the record overall, "including [Plaintiff]'s conservative treatment history and his often[-]noted lack of musculoskeletal or neurological deficits during treatment." T. 22.[6]  "[R]esolving contradictory medical opinions is entirely within the discretion and expertise of the ALJ." *Smith v. Berryhill*, 17-CV-05639 (PAE)(SN), 2018 U.S. Dist. LEXIS 136639, *47 (S.D.N.Y. Aug. 10, 2018), *adopted by* 17 Civ. 5639 (PAE) (SN), 2018 WL 4565144, 2018 U.S. Dist. LEXIS 163255, *46-47 (S.D.N.Y. Sept. 24, 2018).

Plaintiff argues that if the ALJ found Dr. Liu's opinion "vague" then the ALJ should have found Dr. Poss's opinion vague as well, because Dr. Poss relied on Dr. Liu's opinion.  However, Dr. Poss reviewed not only Dr. Liu's consultative examination report, but also other medical record evidence as outlined in Dr. Poss's explanation for his or her opinion.  T. 87.  And Dr. Poss clearly did not rely exclusively on Dr. Liu's opinion because he or she arrived at the conclusion that Plaintiff could perform "light work," with different limitations and degree of limitations than those Dr. Liu opined to.  *Compare* T. 87 *with* T. 456.

Moreover, the ALJ clearly considered the record as a whole, not just the opinion evidence of Dr. Liu, in crafting the physical RFC.  The ALJ weighed Plaintiff's hearing testimony concerning his pain, symptoms, and activities of daily living, and concluded that the testimony was "not entirely consistent with the medical

---

[6] Specifically, Dr. Poss opined that Plaintiff retained a light RFC with specific postural limitations, namely, frequently climb ramps and stairs; frequently climb ladders, ropes, and scaffolds; frequently balance and kneel; and occasionally stoop, crouch, and crawl.  T. 86-87.  He also opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for about 6 hours total in an 8-hour workday, and sit (with normal breaks) for about 6 hours in an 8-hour workday, which is all consistent with light work.  T. 86.

evidence and other evidence in the record." T. 20. Plaintiff reported using a cane and having difficulty walking; the record revealed that Plaintiff was only infrequently observed ambulating with a cane and walking with a "somewhat slow antalgic gait."[7] T. 385, 415, 418, 455. As the ALJ accurately noted, most of the records reflected, however, that Plaintiff walked with a normal, steady, and well-balanced gait, and that Plaintiff was "fully ambulatory." T. 20-21; *see, e.g.,* T. 73, 321, 326, 356, 367, 389. The ALJ also observed the fact that at a "vast majority" of Plaintiff's visits with his primary care physician, Plaintiff was not in any distress, he exhibited a normal range of motion and no musculoskeletal or neurological deficits, and he "recently reported doing very well overall." T. 21; *see generally* T. 401-440, 530-560, 564-579, 580-588. In sum, many of the treatment notes in the record indicate that Plaintiff denied symptoms and contain normal or unremarkable objective findings.

Plaintiff argues that "[w]ithout valid evidence" of Plaintiff's ability to walk at the level required by light work, the ALJ's finding in that regard was unsupported by substantial evidence. But "[t]he Secretary is entitled to rely not only on what the record says, but also on what it does not say" (*Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)), and "[a] medical source's failure to negatively opine on limitations in certain functional areas indicates that the claimant had limitations only in the functional areas specified in the opinion" (*Sonja H.*, 2021 U.S. Dist. LEXIS

---

[7] "[T]he ALJ reasonably concluded that the evidence of record did not support a finding that use of a cane was medically necessary during the relevant time period." *Sonja H.*, 2021 U.S. Dist. LEXIS 4039, at *10; *see* T. 21-22 ("In this case, the record fails to document a cane prescription, and as noted above, the claimant has only been noted to use a cane sporadically during treatment. The claimant also was able to ambulate without a cane at his consultative examination. Therefore, I find that the claimant's use of a cane is not medically necessary."), citing SSR 96-9p, 1996 SSR LEXIS 6. Plaintiff does not dispute this finding.

10

4039, at *16); see Michael V., 2021 U.S. Dist. LEXIS 183491, at *11 (noting "Plaintiff has not identified any medical record that supports a greater restriction as to walking").

The Court therefore concludes that remand is not required on this basis.

### *Activities of Daily Living and Conservative Treatment*

Second, Plaintiff argues that the ALJ improperly focused on Plaintiff's activities of daily living and conservative treatment to "minimize his physical limitations."

In considering a claimant's reports of pain and other limitations, "[t]he ALJ must explain his credibility finding explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Pacholczak v. Berryhill*, No. 1:16-CV-00907 (MAT), 2018 WL 1406731, 2018 U.S. Dist. LEXIS 46581, *6 (W.D.N.Y. Mar. 21, 2018) (internal quotation marks and citations omitted). If Plaintiff's testimony about the "intensity, persistence or functional limitations associated with [his] pain is not fully supported by clinical evidence," then the ALJ is to consider other factors to assess that testimony, including: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *Id.*, citing 20 C.F.R. § 416.929.  Pursuant to the regulations, then, the ALJ is to consider, among other things, a plaintiff's activities of daily living and what treatment or measures were taken to address his or her symptoms.

11

In this case, the ALJ acknowledged Plaintiff alleged a "severely limited ability to perform daily activities, including needing help with personal care." T. 22. The ALJ noted, for example, Plaintiff's hearing testimony that the severity of his pain was 8/10 and constant, and that he generally did not leave his bedroom. T. 20. However, as stated above, in evaluating the remainder of the record the ALJ found that the alleged "intensity, persistence and limiting effects" of Plaintiff's symptoms were not fully reflected in the record; for example, there were many notations that Plaintiff lacked any musculoskeletal or neurological deficits. *See* T. 20-22.

Plaintiff argues that the ALJ cherry-picked evidence in reaching his determination, as the ALJ observed that Plaintiff was weed whacking in 2017, which "suggest[ed] a greater functional ability than alleged." T. 22. "It is well-settled that an ALJ cannot 'cherry pick' only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence." *Forbes v. Colvin*, 13-CV-207(MAT), 2015 WL 4411511, 2015 U.S. Dist. LEXIS 93949, *16 (W.D.N.Y. July 20, 2015).

To be sure, the weed whacking incident resulted in Plaintiff's arrival at the Emergency Department ("E.R.") on June 12, 2017, after he reportedly "bent over to pick up a bag" while weed whacking that morning and "felt an immediate sharp pain in his low back." T. 353-354. While the E.R. physician noted Plaintiff exhibited pain and a decreased range of motion, and an x-ray showed the pedicular screw fracture, Plaintiff was prescribed medications and before his departure on the same date he showed "much relief" from the medications he was given—and he "was walking around the room." T. 355-356. And in follow-up visits with his neurosurgeon,

12

Gregory Bennett, M.D., shortly thereafter, despite Plaintiff's reduced range of motion in his lumbar region, Plaintiff was discharged "in good condition" and was noted to be a "[h]ealthy appearing male, fully ambulatory" who was in "no apparent discomfort."  T. 385, 389-390, 393.

While the ALJ did not explicitly discuss these other records, "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision."  *April B. v. Saul*, 8:18-CV-682 (DJS), 2019 WL 4736243, 2019 U.S. Dist. LEXIS 166088, *20 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted).  The Court concludes that rather than "cherry-picking" the evidence pertaining to the weed whacker incident, the ALJ appears to have simply chosen to use it as an illustration of why he did not fully credit Plaintiff's narrative of his symptoms and limitations.

The ALJ also stated that Plaintiff's "routine and conservative" treatment history called into question the severity of his allegations and weighed against a finding of disability.  T. 21-22.  "Contrary to [P]laintiff's contention, the ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility."  *Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, 2015 U.S. Dist. LEXIS 141807, *14 (W.D.N.Y. Oct. 19, 2015), citing *Netter v. Astrue*, 272 Fed. Appx. 54, 56 (2d Cir. 2008) (summary order).

Plaintiff argues that his "unease to pursue more surgery" due to the seriousness of the surgery and fear that the surgery would again fail (*i.e.*, the broken

13

screw), accounts for his conservative treatment history and thus the ALJ should not have penalized him in this regard.

Plaintiff expressed to providers that he did not want to undergo further surgery.  T. 73, 340.  It was noted by Daniel Molloy, M.D., Plaintiff's primary care physician on July 28, 2017 that Plaintiff had "followed up with Dr. Bennett which we do not have records for.  He was apparently told that there is nothing that can be done [for his broken surgical screw in his back] short of surgical revision."  T. 414; *see* T. 38 (Plaintiff's hearing testimony that Dr. Bennett said his surgery would have to be completely redone, with a "very, very small probability of success").

Regardless of the reason for Plaintiff foregoing further surgery, it remains undisputed that Plaintiff's only treatment after the alleged onset date was "conservative" and solely consisted of taking medication for his symptoms (aside from his E.R. visit following the weed whacking incident on June 12, 2017, and a separate E.R. visit on April 11, 2016, when Plaintiff complained of low back, arm, and wrist pain but he left the same day, against medical advice).  T. 20; *see* T. 353-358, 365-368).  There is also not any other *conservative* treatment in the record, such as physical therapy or chiropractic care.  Indeed, while Plaintiff had seen a chiropractor in 2014, beginning less than one month after his motor vehicle accident, *see* T. 466-504, he discontinued his treatment with that office after August 18, 2014 because his chiropractor no longer accepted his insurance, *see* T. 384, 388.

Plaintiff also points to a September 10, 2019 progress note by Dr. Bennett, which was submitted to the Appeals Counsel but not the ALJ,[8] which stated, "Explain the option of dorsal column stimulator for treating pain but he feels that symptoms have stabilized on medication and given the seriousness of his previous surgeries he doesn't want more surgery.  At this stage he is sufficiently functional that he shouldn't undergo surgery."  T. 73.  Plaintiff argues that this note demonstrates Dr. Bennett's "willing[ness]" to perform an implantation procedure and Plaintiff's reasonable "fear of surgery" that "controlled his decision[-]making."  What Plaintiff leaves out, however, is the portion of the note that includes Plaintiff's additional reason for declining further surgery, *i.e.*, Plaintiff felt that his symptoms had stabilized on medication.  Plaintiff also disregards the portion of the note where Dr. Bennett concluded that Plaintiff should *not* have surgery at this juncture because he was "sufficiently functional."

In sum, Plaintiff's arguments that the ALJ improperly rejected Dr. Liu's opinion concerning "moderate" limitations, and that the ALJ improperly focused on Plaintiff's activities of daily living and conservative treatment in assessing his testimony concerning his physical symptoms and limitations, are without merit.  The ALJ's role as the factfinder was to determine persuasiveness, which the ALJ did here, and the Court may not assume that role.  The Court concludes that substantial evidence supports the ALJ's physical RFC finding, and Plaintiff did not meet his burden of

---

[8] Because this new evidence was submitted only to the Appeals Council, it "became a part of the administrative record when the Appeals Council denied review."  *Rayburn v. Colvin*, No. 6:14-CV-06500 (MAT), 2015 WL 8482780, 2015 U.S. Dist. LEXIS 164969, *8 (W.D.N.Y. Dec. 9, 2015) (internal citations omitted).

showing that no reasonable factfinder could have reached the ALJ's finding on this record.

## CONCLUSION

Is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, Plaintiff's motion (Dkt. No. 11) for judgment on the pleadings is DENIED, the Commissioner's cross-motion (Dkt. No. 12) for similar relief is GRANTED, and the Commissioner's final decision is AFFIRMED.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

                                                __*s/Richard J. Arcara*_____
                                                HONORABLE RICHARD J. ARCARA
                                                UNITED STATES DISTRICT COURT

Dated:   March 8, 2022
           Buffalo, New York